UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

--o0o--

UNITED STATES OF AMERICA,       )   Case No. 1:16-mj-00071-SAB
                                )
              Plaintiff,        )   Fresno, California
                                )   Wednesday, June 29, 2016
      vs.                       )   2:07 P.M.
                                )
JOHN PAL SINGH JANDA, et al.,   )   Hearing re:  bail review for
                                )   Defendant Janda.
              Defendants.       )
                                )

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE STANLEY A. BOONE
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:              KAREN A. ESCOBAR
                           U.S. Attorney's Office
                           2500 Tulare Street, Suite 4401
                           Fresno, CA   93721
                           (559) 497-4000

For Defendant:             ERIC KERSTEN
                           Federal Defender's Office
                           2300 Tulare Street, Suite 330
                           Fresno, CA   93721
                           (559) 487-5561

Court Recorder:            OTILIA ROSALES
                           U.S. District Court
                           2500 Tulare Street, Suite 1501
                           Fresno, CA   93721
                           (559) 499-5928

Transcription Service:     Petrilla Reporting &
                             Transcription
                           5002 - 61st Street
                           Sacramento, CA   95820
                           (916) 455-3887

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1

FRESNO, CALIFORNIA, WEDNESDAY, JUNE 29, 2016, 2:07 P.M.

THE COURT:  All right.  Calling Item No. 3 on the calendar, United States of America v. John Pal Singh Janda.

MS. ESCOBAR:  Karen Ecobar on behalf of the United States.

THE COURT:  All right.  Ms. Escobar.

MR. KERSTEN:  Eric Kersten, Federal Defender's for Mr. Janda who is present.

THE COURT:  All right.  I am in receipt of a bail memorandum and I just dealt with the issue of detention the other day on Mr. Janda.  What's the government's position?

MS. ESCOBAR:  Your Honor, we do not agree with the recommendation.

THE COURT:  All right.  Mr. Kersten.

MR. KERSTEN:  Your Honor, we would ask the Court to release Mr. -- or continue Mr. Janda on release with the amended conditions that have been suggested by Pretrial Services involving the appointment of a new third-party custodian and the requirement that Mr. Janda participate in counseling at the direction of Pretrial Services.

THE COURT:  Mr. Kersten, I will tell you the other day I was much hesitant of Mr. Janda because of his approach both initially to the Pretrial Services officer in his rhetorical questioning of the Pretrial Services officer about

2

standard information that the officer requires in order to do a proper report to advise this Court.  He seemed to overcome that hurdle and there was a hesitation on the part of the Court.

But the third-party custodian who I see is present in court, I examined the third-party custodian and I felt that he was a adequate third-party custodian based upon my admonition and the requirement that I take the role of third party very seriously and I expect that the third party to stand behind that and to report any and all conditions.  And it appears that in this case the third-party custodian did the absolute correct job and I'm very much concerned.

And all I see this, at least from the four corners of this document, is the defendant getting somebody that he can deal with as opposed to somebody that is an adequate third party.  And I really want to hear from you why Ms. Torres is appropriate.  I mean frankly it's -- this third party is doing the right job and I am very much concerned about Mr. Janda's comments, et cetera in this case.  So I'd like to hear from you on that please.

MR. KERSTEN:  Yeah.  I don't have all the comments not being present in the court last week, but --

THE COURT:  Well I can tell you this, I can tell you this -- and I think it's in -- it was in a couple of hearings. I know Mr. Chavez handled I believe both of the hearings, but what I'm telling you is that Mr. Janda was not forthright with

3

Pretrial Services in terms of answering questions so that Pretrial Services could make an adequate report. It almost bordered on obstruction. But it's his call. If he doesn't want to be interviewed by pretrial, that's his call. But it was like why do you need that information.

And he seems to be a professional and he seems to understand that, but I frankly saw a hesitation on his part and not a candidate that based upon the conditions and the nature and circumstance of the offense that he was a candidate for release, but I released him based upon the third party consideration.

And also, Mr. Chavez, while he objected to it, I would not release him until I actually had his passport in hand, and he provided the passport and he was accordingly released. But I really want that question answered. I realize, you know, there was a hesitation on my part.

MR. KERSTEN: In regards to Mr. Sandhu (phonetic), I'm not sure -- I have fairly limited information obviously -- he had doubts of some sort about Mr. Janda's compliance with his conditions of release.

It seems that there's an allegation that there were rumors of some sort that he wouldn't make himself available -- he, Mr. Janda, wouldn't make himself available to the Court according to the Pretrial Services report.

But I think, you know, Mr. Janda, he resides here,

his children are here, his business is here.  He's not -- I don't think he's going to flee.  I think clearly he's not a danger.  I think the issue would be whether he would be willing to appear in court as required.  And it seems that he would be again, given his business being here, his family being here, his children being here.

While the report indicates he was raised in the United Kingdom, you know, I think it's unlikely that he would flee there just for the -- when the Court has required him to surrender his passport.  You know, it would certainly make things difficult.  He has court scheduled in the Central District of California for next week, so there's not a long lead time as far as what's happening here.  But you know, I've spoken briefly to Ms. Torres, Pretrial Services has spoken to her.  They believe she's appropriate, but she's present.

THE COURT:  But why Ms. Torres, Mr. Kersten?  What is it about Ms. Torres that -- is it somebody --

MR. KERSTEN:  Because she's a friend of Mr. Janda who they see each other frequently, two to three times a week.  They have been for several years.  They've known each other for a long time.

THE COURT:  But Mr. Sandu resided with him and the Court felt he was an adequate third party to represent that he would be there.  So why is Ms. Torres -- what is it about Ms. Torres other than they're just a friend?  Is there something

5

that's special about her above and beyond, in light of what Mr. Sandhu is saying?

MR. KERSTEN:  Well I -- you know, it seems to me that what Mr. Sandhu is saying is hearing rumors and not feeling comfortable, but I don't really see specifics that I can address.  Obviously Mr. Sandhu has questions -- has doubts, but I don't see specific allegations to address there frankly, Your Honor.

THE COURT:  All right.  Mr. Sandhu, you're present. Can you come up please?

MR. SANDHU:  Yes, Your Honor.

THE COURT:  All right.  Mr. Sandhu, would you just stand over here, just by this table over here?

MR. SANDHU:  Yes, Your Honor.

THE COURT:  Mr. Sandhu, why don't you want to be the third-party custodian?

MR. SANDHU:  Yeah.  Because you know, he's acting is not normal the last five, six days.  He like -- he's very close, known him like for years and years, calling me he's going to hide somewhere.

THE COURT:  He's going to what?

MR. Sandhu:  He's going to hide somewhere, you know. So I don't want to be (indiscernible), you know, to be comfortable, anything.

THE COURT:  So he told you this directly, that he

6

wants to hide somewhere?

MR. SANDHU:  He acting -- he called me Monday morning from their office.  He cursed me, no reason; talking about my father, talking about my father passed away like 25, 30 years ago.  He talking about all the crap from my family.  So why I going to be third party for him?

THE COURT:  Okay.  And what did he say about him hiding?  Did he say that he was --

MR. SANDHU:  No.  He not tell me, to somebody else.  One day he tell -- (indiscernible) he say I feel like I goig to be suicide.  I have no -- to go through what they're doing, and my mom going to do.

THE COURT:  Okay.  And so tell me why you feel uncomfortable being the third-party custodian.

MR. SANDHU:  Yeah.  Because I'm not trust him, nothing.

THE COURT:  Okay.

MR. SANDHU:  Last I help him -- I'm a pastor, Judge.

THE COURT:  Yes.

MR. SANDHU:  Like I'm going to help him almost a year and a half free, (indiscernible).  He promised like so many fake, everything fake, fake, fake.  Like I like -- I stop like -- I bought a car for him a year and a half ago.  He say I'm going to pay off two month ago.  Last three month he cannot make the payment.  All the employee left, he not pay all the

7

employee.  Employee go to labor court last week -- two days ago.

THE COURT:  Labor court?

MR. SANDHU:  Labor court.  So suing him, everything. All of his things are not paid.  All the people are leaving, all that, everybody calling me.  He say when are you going to cut the check?  He lying to people.  He's so -- say I'm going to cut -- let's cut -- when you going to cut the check.  When I don't have money, why they going to cut the check.

THE COURT:  Okay.

MR. SANDHU:  The federal lien his -- all the medical come in.  He have zero (indiscernible).  I have -- I'm in his account with Wells Fargo.  Every time negative, my name up. Everything negative, my name up.  I take him to last Friday (indiscernible).  I say take my name out.  I have one account at CitiBank, maybe $100 left there.  I tell him take my account there I took my name out.  You know why?  So I don't want to be, everything negative to my name.

THE COURT:  Okay.

MR. SANDHU:  That's all I can say.

THE COURT:  All right.  Thank you, Mr. Sandhu.

MR. SANDHU:  I talked to my attorney yesterday, you know, I get advice from attorney, say you don't need to be third party for him.

THE COURT:  All right.  Ms. Escobar, do you have any

8

questions for Mr. Sandhu?

MS. ESCOBAR:  No, not for Mr. Sandhu.

THE COURT:  Mr. Kersten, did you have any questions?

Mr. Sandhu, come back a minute just in case Mr. --

MR. KERSTEN:  Your Honor, I don't have questions of Mr. Sandhu.

THE COURT:  Never mind.  Thank you.

All right.  Continue Mr. Kersten, then I'll hear from the government.

MR. KERSTEN:  Well it seems that there's obviously personal tensions between Mr. Sandhu and Mr. Janda and frankly I'm not sure that he was an appropriate third-party custodian to begin with because it seems that there is an entanglement -- a financial entanglement that's been going on for a period of time.  He said that he's spoken to his attorney who said that he didn't need to be a third party.  It seems that he was doing it more out of a --

THE COURT:  Well but he just described that your client called him and was irrational and he says he hasn't been rational the last five days.  And it just -- I just released him recently, just last week I released him.

So -- and he's known him a long time.  And I remember reading in the report about the relationship, how long that he had been a pastor and I felt comfortable, and I brought him forward and asked him all the questions I do in my courtroom

9

about third-party custodians and he said he was willing to abide by it, and it seems that he's abiding by it.

MR. KERSTEN:  Yeah.  And I certainly see the -- he is abiding, he's upset.  But there's financial entanglements that Mr. Sandhu described that we don't normally see in third-party custodians, we don't normally see in pastor --

THE COURT:  Yes.  I understand that.

MR. KERSTEN:  -- you know, relationships.  So it's a different circumstance and it seems that there are a lot of personal issues going on.  I know that Mr. Sandhu -- or excuse me, Mr. Janda's concerned that Mr. Sandhu has been calling his employees and telling them not to show up at work because they're not going to be paid.  So it's --

THE COURT:  But why would he do that?  I mean Mr. Janda has a record of not responding to the Pretrial Services officer, which is why the matter was continued, and like everything's good now, yes.  And then he got the message.

But the same problem with the FBI, that's exactly what was reported to me with regard to the FBI, saying -- which he has a right to remain silent, we understand that.  But you know, once he agreed to be interviewed, then he was, you know, why do you need that information, what relevance is that.  A lot of arguing.  So it's a consistent pattern of behavior with independent people that are representatives of the court.

MR. KERSTEN:  Well I think in regards to

10

conversations with the FBI he's actually going beyond what was required to begin with and --

THE COURT: I'll agree -- I'll give you that, Mr. Kersten. But then subsequently with pretrial, the conduct that Mr. Sandhu was talking about is consistent with what the conduct he was giving the Pretrial Services officer. He's got no dog in the fight.

MR. KERSTEN: Just one second please.

(Pause - counsel and defendant conferring.)

MR. KERSTEN: It's my understanding that Mr. Janda denies saying he was suicidal or being suicidal and contends that the argument that -- both of their fathers passed away and it had to do with the history in that regard.

THE COURT: Okay. All right.

MR. KERSTEN: But again, I think that it obviously is stressful to be charged with a criminal offense, but the requirement of counseling I think addresses that. There is a third-party custodian again. There's no prior criminal record. There's strong ties in terms of family.

THE COURT: Well let me talk about the ties. The other reason for the argument for release is that he had a business and now it appears that the business isn't amounting to much; in other words, not paying his employees. He doesn't have that tie. And again, the analysis is he's not in this district, he's in the Central District of California. This is

11

an out-of-district warrant.  He's being courtesy supervised by the Eastern District.  The question is is there's no real ties to the Central District of California and it's changed since I released him; in part the third party and the fact it appears that he doesn't really have a business.

MR. JANDA:  Your Honor, may I --

THE COURT:  No.  I don't want you to talk.  I don't want you to talk.  I want you to talk to your lawyer.

(Pause - counsel and defendant conferring.)

MR. KERSTEN:  It sounds like there are financial problems with the business, but it's my understanding that the business is still ongoing and in fact that Mr. Janda actually saw patients yesterday afternoon and this morning.

So I think that it does sound like there are financial problems there, but it certainly sounds that if he's seeing patients, I think that the business is ongoing and I think --

THE COURT:  That's not necessarily true.  He may not be over --

MR. KERSTEN:  Well I think as a physician, the primary responsibility is to patients, Your Honor.

THE COURT:  Not to money, but there is a connection in terms of staying around in the area, and if it's a profitable based business as opposed to seeing patients and how long they -- Ms. Escobar, the government's position?

12

MS. ESCOBAR:  Your Honor, I think that substituting one third-party custodian for another is not the solution here. The Court entrusted Mr. Sandhu to serve as a third-party custodian.  I believe that we should now credit his opinion that the defendant is a flight risk and is not willing to abide by the conditions of release.

I know that in the Central District the other defendants were released on very high unsecured bond in the hundreds of thousands.  It might have been $350,000 is what I remember.  But this defendant is the only charged defendant and he's -- without the prescriptions there would've not been the $65 million fraud.

THE COURT:  Tell me what you mean by charged.  I didn't get what you meant by the only charged defendant.

MS. ESCOBAR:  Of the defendants charged in this case, he was the only physician.  The others were --

THE COURT:  Okay.  There was --

MS. ESCOBAR:  Okay.  So in terms of his role --

THE COURT:  There was a noun missing.

MS. ESCOBAR:  -- an abuse of trust issue as well.  So at the very least, I'd ask the Court to impose an unsecured bond and also electronic monitoring.

MR. KERSTEN:  And I would just note that in regards to the co-defendants, again, all I have is a review of the indictment, but it's my understanding that the allegation is

13

that Mr. Janda received about $345,000 where many millions were involved with the other folks who have been released on unsecured bonds.

THE COURT:  But he was the --

MS. ESCOBAR:  The only.

THE COURT:  He was the physician that was part and part of the scheme to defraud.

MS. ESCOBAR:  And the AUSA has represented that this defendant's financial gain was one to two million dollars.

THE COURT:  Okay.  That I did not -- we did not have that the other day.

MS. ESCOBAR:  Yeah.

THE COURT:  Okay.  All right.  Mr. Kersten, I'll give you the last word.

MR. KERSTEN:  Submitted, Your Honor.

THE COURT:  All right.  Ms. Escobar, submitted?

MS. ESCOBAR:  Yes, Your Honor.

THE COURT:  Pretrial, anything further?  Mr. Craddock I take it you're fine?

MR. CRADDOCK:  Yeah.  Nothing to add, Your Honor. Thank you.

THE COURT:  All right.  Thank you.

All right.  The matter is submitted.  The Court has carefully considered the facts and circumstances of this case. It is mindful of the standards.  This is a bail review in order

14

to substitute in the third-party custodian done within a week of the Court previously releasing Mr. Janda on the terms and conditions which it felt were reasonably assured his appearance and finding that the government had shown by preponderance of the evidence that the defendant was a flight risk, but the Court found that there were conditions that reasonably assured his appearance.

In this case the Court has considered the third-party custodian's consideration for withdrawal, the new third-party custodian.  The Court has considered other facts and circumstances not previously considered at the last hearing, including additional facts as to the nature and circumstance of the offense as well as post conduct on the part of the defendant.

The Court still finds that the government has proven by a preponderance of the evidence that the defendant is a flight risk.  However, it finds that the facts and circumstances and the conditions presently being offered do not reasonably assure his appearance and therefore the Court orders that Mr. Janda be ordered detained and transported forthwith to the Central District of California for further proceedings.

Anything further, Mr. Kersten?

MR. KERSTEN:  No, Your Honor.

THE COURT:  Ms. Escobar, anything further?

MS. ESCOBAR:  No, Your Honor.

15

THE COURT:  All right.  Thank you.  All right.  We are in recess.

(Whereupon the hearing in the above-entitled matter was adjourned at 2:25 p.m.)

--o0o--

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ Jennifer Barris                    August 10, 2016

Jennifer Barris, Transcriber

AAERT CET*668